**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

_____
)
**WESLEY REED,**                         )
**GREGORY STRONG,**                 )
**RICHARD STRONG,**                   )
**ANDREW JOHNSON,**               )
**JIMMIE LEE JONES,**                  )
**WALTER GRIFFIN,**                    )
**STACY GRIFFIN and**                 )      **CIVIL ACTION**
**JAMES SIMPSON,**                      )      No. 4:21-cv-113-DMB-DAS
)
)
**Plaintiffs,**         )
)      **AMENDED COMPLAINT AND**
)      **JURY DEMAND**
**v.**                              )
)
**PITTS FARMS PARTNERSHIP,**   )
)
**Defendant.**        )
_____)


## AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1.      The Plaintiffs in this case are eight Black American farmworkers who have been

systematically underpaid and denied job opportunities in favor of white foreign workers by their

employer, Pitts Farms Partnership (PFP), for years. While employing Plaintiffs as farmworkers,

PFP applied to the U.S. government to bring white South African workers in under a foreign

agricultural worker visa program to supplement its labor force, claiming it could not find eligible

U.S. workers to take the jobs. Then, despite promises to the U.S. government that it would treat

its foreign and domestic workforce equally – a requirement of the foreign worker visa program -

PFP paid its white South African workers significantly more for the same or similar work. PFP's

failure to pay its Black U.S. workers the same rate and offer them the same job opportunities as its white South African workers is a violation of federal law and a breach of contract that has resulted in massive underpayment and lost job opportunities to Plaintiffs.

2.      Plaintiffs bring this action to recover damages for the job opportunities denied them by Pitts Farms Partnership, as well as additional wages due them under federal law. Plaintiffs seek punitive damages and injunctive relief to ensure that Pitts Farms Partnership complies in the future with federal laws and regulations that guarantee U.S. workers a hiring preference for available jobs in this country and ensuring that the importation of foreign workers will not depress the wages of domestic farmworkers in the area. Plaintiffs also bring claims under 42 U.S.C. §1981 for discrimination based on race and/or alienage.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 29 U.S.C. § 1854 (the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA")); 29 U.S.C. § 216(b) (the Fair Labor Standards Act ("FLSA")); 28 U.S.C. § 1343(a)(4) (civil rights), 42 U.S.C. §§ 1981 and 1988 (equal rights under the law); and by 28 U.S.C. § 1331 (federal question).

4.      This Court has supplemental jurisdiction over the claims arising under state and common law because these claims are so related to the federal claims that they form part of the same case or controversy.

5.       Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because Defendant is a resident of this district, and the cause of action arose in this district.

## PARTIES

- 2 -

7.      Plaintiffs Wesley Reed, Gregory Strong, Richard Strong, Andrew Johnson, Jimmie Lee Jones, Walter Griffin, Stacy Griffin and James Simpson are Black United States citizens. Plaintiffs reside in or near Sunflower County, Mississippi. At all times relevant to this action, Plaintiffs were employed performing field labor of a seasonal or temporary nature relating to the planting, cultivation and harvesting of agricultural commodities produced for sale in interstate commerce.

8.      Defendant Pitts Farms Partnership ("PFP") is a partnership based in Sunflower County, Mississippi. The partners of PFP are believed to be William Pitts, Jr., Walter Pitts and Thomas Pitts. At all times relevant to this action, PFP operated a farm in Sunflower County on which various crops were produced for sale in interstate commerce, including cotton, soybeans and corn. At all times relevant to this action, PFP employed migrant and seasonal agricultural workers to perform agricultural labor on the farm's operations.

9.      At all times relevant to this action, PFP was an employer of Plaintiffs within the meaning of the H-2A regulations, 20 C.F.R. § 655.103(b), because it had a place of business in Sunflower County, Mississippi, a means to be contacted for employment, had the ability to control the work of H-2A workers and Plaintiffs, and had a valid Federal Employer Identification Number.

## STATUTORY AND REGULATORY FRAMEWORK

10.     An employer in the United States may import foreign workers to perform agricultural labor of a temporary nature only if the U.S. Department of Labor ("DOL") certifies that there are insufficient available workers within the U.S. to perform the job and the employment of foreign workers will not adversely affect the wages and working conditions of

similarly-situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1188 (a)(1). Foreign workers admitted in this fashion are commonly referred to as "H-2A workers."

11.     Agricultural employers seeking the admission of H-2A workers must first file a temporary labor certification application with DOL. 20 C.F.R. § 655.130. This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations. This clearance order is used in the recruitment of both U.S. and H-2A workers and must offer to U.S. workers no less than the same benefits, wages and working conditions the employer offers or provides to H-2A workers. 20 C.F.R. § 655.122(a). Federal regulations establish the minimum benefits, wages, and working conditions that must be offered by the petitioning employer in order to ensure that U.S. workers are afforded a preference in hiring for the positions and that if foreign workers are admitted, they are employed at terms that do not adversely affect similarly-situated U.S. workers. 20 C.F. R. § 655.0(a)(1). To avoid an adverse effect on similarly-employed U.S. workers, the regulations mandate that the wages and job benefits provided to the employer's H-2A workers must also extend to similarly-employed U.S. workers. 20 C.F.R. § 655.0(a)(3).

12.     Among the specific terms required by the H-2A regulations are the following:

a.     The employer will contact its former U.S. workers employed during the previous year and solicit their return to the job. 20 C.F.R. § 655.153;

b.     The employer will employ at least the same kind and degree of effort to recruit U.S. workers to fill the positions as it does to obtain foreign workers. 20 C.F.R. § 655.154(b);

c.     The employer will pay all workers performing the activities described in the petition or otherwise performed by the H-2A workers at least the applicable

AEWR for every hour or portion thereof worked during a pay period. 20 C.F.R. § 655.122(l);

    d.   The employer will offer to U.S. workers no less than the same benefits, wages, and working conditions that are being provided to the H-2A workers. 20 C.F.R. § 655.122(a);

    e.   The employer will provide employment to any qualified U.S. worker who applies to the employer until 50 percent of the H-2A workers' employment contract has expired. 20 C.F.R. § 655.135(d);

    f.   The employer will keep accurate records showing for each workday the number of hours offered and the starting and finishing time. 20 C.F.R § 655.122(j)(1);

    g.   The employer will provide to each worker on or before payday a written statement listing, *inter alia*, the hours of employment offered and the employer's Federal Employer Identification Number, 20 C.F.R. § 655.122(k); and

    h.   The employer will post and maintain in a conspicuous place at the jobsite a DOL poster setting out the rights and protections for workers under the H-2A program.  20 C.F.R. § 655.135(l).

13.    The clearance order must include an attestation from the employer that it describes the actual terms and conditions of the proffered employment and contains all material terms and conditions of the job. 20 C.F.R. § 653.501(c)(3)(viii).

14.    The H-2A regulations also mandate that prior to filing an application for temporary labor certification with the DOL, an employer desiring to participate in the program

- 5 -

must engage in specific steps to positively recruit domestic workers. 20 C.F.R. § 655.135(c). In recruiting U.S. workers, the employer is obligated to make the same kind and degree of effort as it does to obtain foreign workers. 20 C.F.R. § 655.154(b).

15.     Positive recruitment steps include, among others, submitting a job order to the local state workforce agency (SWA) and contacting former workers through mail or other effective means. 20 C.F.R. §655.153. Before its temporary labor certification can be approved, the employer must file a written recruitment report with the DOL certifying officer listing all recruitment sources, identifying all U.S. workers referred and the results of the referral and confirming that all former U.S. worker employees have been contacted and by which means. 20 C.F.R. § 655.156(a).

16.     The DOL determines whether an employer's H-2A temporary labor certification application should be approved based on various criteria, including the employer's compliance with the positive recruitment requirements set out in 20 C.F.R. § 655.153. 20 C.F.R. § 655.161.

17.     Once an employer receives certification from the DOL and imports H-2A workers, its clearance order becomes the job contract for both the foreign workers and any U.S. workers in corresponding employment, defined as domestic workers engaged in any work defined in the clearance order or any agricultural work performed by the H-2A workers. 20 C.F.R. § 655.122(q); 20 C.F.R. § 103(b).

## STATEMENT OF FACTS

18.     PFP is a family partnership that farms several thousand acres in and near Sunflower County, Mississippi. Among its major crops grown are cotton, soybeans and corn, with much of the cropland irrigated. PFP transports its harvested crops for processing, sale or storage in various vehicles, including trucks in excess of 26,000 pounds, some of which are

operated on occasion by Pitts Farms Trucking, a subsidiary of PFP. Before the start of each agricultural season on its operations, PFP hires a number of workers to assist in the planting, cultivation, harvest and transport of its crops and to otherwise provide agricultural labor services in support of PFP's farming activities. Although several of these workers are employed by the farm year after year, PFP's labor needs change from season to season, and each year's hiring process is a separate and distinct transaction and process from that of prior years.

19.    Sunflower County, where PFP is located, is predominantly Black; as of 2019, Blacks made up an estimated 73% of the county's population. For many years, PFP employed a majority Black workforce. Since 2014, however, this number has steadily dwindled, as PFP began applying for and hiring white South Africans for the same work. And since 2014, PFP has used the H-2A program to hire only white South Africans – no Black South Africans – although that country too is majority Black by a wide margin: estimates stand at around 80% Black compared to less than 8% white.

20.    Plaintiffs are among the local residents PFP has employed on a seasonal basis to perform a wide range of agricultural tasks for the farm.

21.    PFP ordinarily hired Plaintiffs Mr. Reed, Mr. Johnson, Mr. Walter Griffin, Mr. Richard Strong and Mr. Gregory Strong to perform agricultural labor from February through October or November. PFP hired Mr. Jones to perform agricultural work during portions of the 2018, 2019 and 2020 harvest seasons. PFP hired Plaintiffs Mr. Stacy Griffin and Mr. Simpson primarily to drive heavy trucks, including those operated through its subsidiary Pitts Farms Trucking, during the months when crops were being harvested, usually from late July or early August through November.

22.     Plaintiff Wesley Reed was annually hired and employed on a seasonal basis on the Pitts family farm for approximately 19 years. In recent years, Mr. Reed was employed and paid his wages by PFP. Mr. Reed last worked for PFP in November 2019. During his time working for PFP, Mr. Reed was assigned and performed a wide range of agricultural jobs, including operating tractors and other equipment used to till the soil, plant, irrigate, fertilize and harvest PFP's crops. Mr. Reed also mixed chemicals and pesticides to be applied to PFP's crops and maintained and repaired PFP's farm equipment. During most workweeks, Mr. Reed's job assignments included agricultural tasks other than operation of tractors or other agricultural equipment. In every year since he began working for the Pitts family, Mr. Reed was paid the federal minimum wage, which has been $7.25 per hour since July 2009. PFP occasionally paid Mr. Reed a slightly higher rate for work performed on weekends.

23.     Plaintiff Andrew Johnson was annually hired and employed on a seasonal basis on the Pitts family farm for approximately 19 years. In recent years, Mr. Johnson was employed and paid his wages by PFP. Mr. Johnson last worked for PFP in December 2019. During his time working for PFP, Mr. Johnson was assigned and performed a wide range of agricultural jobs, including operating tractors and other equipment used to till the soil, plant, irrigate, fertilize and harvest PFP's crops. Mr. Johnson also mixed chemicals and pesticides to be applied to PFP's crops and maintained and repaired PFP's farm equipment. During most workweeks, Mr. Johnson's job assignments included agricultural tasks other than operation of tractors or other agricultural equipment. In every year since he began working for the Pitts family, Mr. Johnson was paid the federal minimum wage, which has been $7.25 per hour since July 2009. PFP occasionally paid Mr. Johnson a slightly higher rate for work performed on weekends.

24.     Plaintiff Jimmie Lee Jones was hired and employed on a seasonal basis on the Pitts family farm during the harvest seasons of 2018, 2019 and 2020. For this work, Mr. Jones was employed and paid his wages by PFP. Mr. Jones was not offered employment during the earlier parts of the season. Mr. Jones possessed all the specified qualifications for the jobs given to PFP's H-2A workers and, had he been notified of those positions and the wage rate being paid, he would have accepted the job. Mr. Jones last worked for PFP in or about October 2020. During his time working for PFP, Mr. Jones was assigned and performed a wide range of agricultural jobs, including assisting with the harvest of PFP's grain crops. Mr. Jones also operated tractors and other agricultural equipment, as well as assisting in the maintenance and repair of PFP's farm equipment. During most workweeks, Mr. Jones' job assignments included agricultural tasks other than operation of tractors or other agricultural equipment. Mr. Jones was paid the federal minimum wage, which has been $7.25 per hour since July 2009. PFP occasionally paid Mr. Johnson a slightly higher rate for work performed on weekends.

25.     Plaintiff Walter Griffin was annually hired and employed on a seasonal basis on the Pitts family farm starting in 1999. In recent years, Mr. Walter Griffin was employed and paid his wages by PFP. Mr. Walter Griffin last worked for PFP in 2019. During his time working for PFP, Mr. Walter Griffin was assigned and performed a wide range of agricultural jobs, including operating tractors and other equipment used to till the soil, plant, irrigate, fertilize and harvest PFP's crops, as well haul diesel and seed. Mr. Walter Griffin also repaired and maintained PFP's irrigation and fertilizer equipment. During most workweeks, Mr. Walter Griffin's job assignments included agricultural tasks other than operation of tractors or other agricultural equipment. From 1999 through 2006 or 2007, Mr. Walter Griffin made the federal minimum

wage of $7.25 an hour. From 2006 0r 2007 to 2019, Mr. Walter Griffin made $8 an hour Monday through Friday, and $9 an hour on weekends.

26.     Plaintiff Gregory Strong was annually hired and employed on a seasonal basis on the Pitts family farm for approximately 24 years. In recent years, Mr. Gregory Strong was employed and paid by PFP. Mr. Gregory Strong last worked for PFP in December 2020. During his time working for PFP, Mr. Gregory Strong was assigned and performed a wide range of agricultural jobs, including operating tractors and other equipment used to till the soil, plant, irrigate, fertilize and harvest PFP's crops. Mr. Gregory Strong also mixed chemicals and pesticides to be applied to PFP's crops and maintained and repaired PFP's farm equipment. During most workweeks, Mr. Gregory Strong's job assignments included agricultural tasks other than operation of tractors or other agricultural equipment. For his work, Mr. Gregory Strong normally was paid the federal minimum wage, which has been $7.25 per hour since July 2009. PFP occasionally paid Mr. Gregory Strong a slightly higher rate for work performed on weekends.

27.     Plaintiff Richard Strong was annually hired and employed on a seasonal basis on the Pitts family farm for approximately 24 years. In recent years, Mr. Richard Strong was employed and paid by PFP. Mr. Richard Strong last worked for PFP in November 2019. During his time working for PFP, Mr. Richard Strong was assigned and performed a wide range of agricultural jobs. These jobs included, but were not limited to, operating tractors and other equipment used to till the soil, plant, irrigate, fertilize and harvest PFP's crops. Mr. Richard Strong also mixed chemicals and pesticides to be applied to PFP's crops and maintained and repaired PFP's farm equipment. During most workweeks, Mr. Richard Strong's job assignments included agricultural tasks other than operation of tractors or other agricultural equipment. For

this work, Mr. Richard Strong normally was paid the federal minimum wage, which has been $7.25 per hour since July 2009. PFP occasionally paid Mr. Richard Strong a slightly higher rate for work performed on weekends.

28.     From approximately 2013 through 2020, Plaintiffs Stacy Griffin and James Simpson were annually hired and employed on a seasonal basis to transport PFP's harvested crops in heavy trucks (in excess of 26,000 pounds) from the farm to points in Arkansas and Mississippi. In addition, Mr. Stacy Griffin and Mr. Simpson were hired and employed to transport surplus or obsolete PFP equipment from the farm to sites at which the equipment was to be sold at public auction. Although Mr. Stacy Griffin and Mr. Simpson were paid by Pitts Farms Trucking, they were supervised, directed and given assignments by the partners of PFP and their supervisory employees. Since at least 2018, Mr. Stacy Griffin and Mr. Simpson were paid $9.00 per hour for their work transporting PFP crops and equipment.

29.     Throughout the Plaintiffs' employment for the Pitts family, the Pitts employed a supervisor who had the authority to hire and fire domestic workers, and who provided Plaintiffs, and other farmworkers, with their daily job duties. This supervisor was always white. Occasionally, the supervisor used racial slurs, including the n-word. Pitts Farms was informed about the supervisor's use of racial slurs and did nothing.

30.     Every year since at least 2014, PFP has supplemented its local workforce by hiring foreign H-2A guestworkers from South Africa. To obtain authorization for the admission of these foreign workers, PFP has annually sought and obtained DOL certification as described in Paragraphs 10 through 13. Without exception, the H-2A workers hired by PFP have been white citizens of the Republic of South Africa.

- 11 -

31.     From 2014 through 2020, PFP annually hired COC Placement Service, LLC as its representative and agent to assist the farm in recruiting, soliciting, hiring and furnishing seasonal labor. As PFP's H-2A agent, COC Placement Service's responsibilities included preparing PFP's application for temporary labor certification, including the clearance orders submitted with the H-2A applications. The clearance orders prepared by COC Placement Service were used by PFP to recruit and solicit U.S. workers for the positions as part of the farm's positive recruitment requirements pursuant to 20 C.F.R. §§ 655.150 through 655.158. Up to and including the 2019 agricultural seasons, COC Placement Service also prepared the newspaper advertisements that PFP was required to place pursuant to 20 C.F.R. §§ 655.151 and 655.152 in order to recruit and solicit U.S. workers. With respect to the agricultural seasons from 2014 through 2020, PFP did not make the same kind and degree of effort to recruit U.S. workers, including Plaintiffs, as it did to obtain foreign workers.

32.     In each of its H-2A applications seeking to hire foreign workers, PFP requested "agricultural equipment operators" for employment from approximately February through mid-November. In each of these H-2A applications, the job duties were described as driving tractors and operating farm equipment to till soil, to plant, irrigate, fertilize and harvest crops, as well as performing mechanical repairs and maintenance for PFP's farm equipment.

33.     In its H-2A applications seeking to hire foreign workers, PFP stated that it had attempted contact with all former U.S. employees and that these efforts were ongoing.

34.     In each of its H-2A applications, PFP included a declaration, signed under the penalties of perjury on behalf of PFP by one of its partners, that in its employment of H-2A workers, PFP would comply with several conditions, including the following:

- 12 -

a. The job opportunity was open to any qualified U.S. worker without regard to race, color, national origin, age, sex, religion or handicap;

b. That PFP had conducted and would continue to conduct the required recruitment procedures (including those in 20 C.F.R. § 655.153);

c. That U.S. workers would be offered wages, benefits and job conditions no less than PFP was offering the H-2A workers;

d. That PFP would pay at least the AEWR;

e. That PFP would not lay off U.S. agricultural equipment operators except for lawful, job-related reasons; and

f. That PFP's job opportunity would comply with the requirements of 20 C.F.R. § 655, Part B, including the provisions regarding recordkeeping, 20 C.F.R. § 655.122(j), wage statements, 20 C.F.R. § 655.122(k), worker employment contracts, 20 C.F.R § 655.122(q), and postings of worker rights under the H-2A program, 20 C.F.R. § 655.135(l).

35. Upon receipt and following review of each of PFP's H-2A applications, DOL's Office of Foreign Labor Certification issued a notice of acceptance letter. Among other things, the notice of acceptance letters listed the positive recruitment steps PFP would need to complete before the date that any foreign workers departed for PFP's place of employment. Among these steps was a requirement pursuant to 20 C.F.R. § 655.153 that PFP "establish contact, by mail or other effective means, with former employees who were employed by [PFP] in the occupation at the place of employment during the previous year and solicit their return to the job this year." The notice of acceptance letters also informed PFP of the need to submit to DOL a written

- 13 -

recruitment report that included confirmation that former U.S. employees were contacted, and the means used to contact them.

36.     With respect to each of its H-2A applications seeking to hire foreign workers, PFP submitted to the DOL a written recruitment report, as required by 20 C.F.R. § 655.156 and the notice of acceptance letters described in Paragraph 35. These reports were submitted on a form prepared by COC Placement Service, LLC and were signed on behalf of PFP by one of its partners. Each of the reports stated that PFP had contacted available former U.S. employees by phone or mail and that none of these employees was available.

37.     Despite the fact that they were long-time seasonal employees of PFP who had been assigned and performed each of the tasks described in PFP's H-2A applications and possessed all of the specified job qualifications, Plaintiffs Mr. Reed, Mr. Johnson, Mr. Jones, Mr. Walter Griffin, Mr. Gregory Strong and Mr. Richard Strong were never contacted by mail or telephone by or on behalf of PFP regarding the positions for which H-2A workers had been requested: While it alerted Plaintiffs that there were jobs available performing the tasks described in its H-2A applications, PFP never informed Mr. Reed, Mr. Johnson, Mr. Walter Griffin, Mr. Gregory Strong or Mr. Richard Strong that these positions would be paid at the AEWR, rather than the federal minimum wage, a difference of between $2 to $4 an hour. PFP failed to notify Mr. Jones regarding the availability during the pre-harvest periods (February through July) of the positions for which H-2A workers had been requested.

38.     Based on the information contained in its H-2A applications, the declarations described in Paragraph 34 and the recruitment reports described in Paragraph 35 and 36, PFP was granted temporary labor certifications by DOL for each agricultural season from 2014 through 2020. Through its agent, COC Placement Service, PFP then intentionally recruited only

- 14 -

white foreign workers to fill the DOL-approved positions during each of those agricultural seasons.

39.    In addition to the job duties described in PFP's H-2A applications, the white H-2A workers employed by PFP performed several additional tasks: They mixed and applied pesticides and chemicals to PFP's crops; they also drove the same heavy trucks that Plaintiffs Mr. Stacy Griffin and Mr. Simpson operated during the harvest season to transport water supplies to various locations on the farm and to transport surplus or obsolete farm equipment from the farm to various off-farm sites at which the equipment was to be sold at public auction.

40.    Although they were long-time seasonal employees who had for years driven heavy trucks to transport PFP's crops, as well as having driven PFP's surplus and obsolete equipment to auction sites, Mr. Stacy Griffin and Mr. Simpson were never contacted by mail or telephone by or on behalf of PFP regarding the truck-driving jobs performed by the farm's South African H-2A workers, or any of the field work positions. Had these jobs been available to them at the AEWR paid PFP's white foreign workers, Mr. Stacy Griffin and Mr. Simpson would have willingly accepted the positions.

41.    In every year that PFP used the H-2A program, it compensated its white foreign workers at the Mississippi AEWR.  These rates were as follows:

| | |
|---|---|
| 2014 | $ 9.87 per hour |
| 2015 | $10.18 per hour |
| 2016 | $10.69 per hour |
| 2017 | $10.38 per hour |
| 2018 | $10.73 per hour |
| 2019 | $11.33 per hour |

- 15 -

2020                    $11.83 per hour

42.     During the time they were employed by PFP on one of its operations from 2014 through 2020, Plaintiffs were assigned and performed tasks that were either among those described in PFP's H-2A applications for those years or, despite not being among the activities listed in PFP's H-2A applications, were nonetheless performed by PFP's H-2A worker employees, such as driving heavy trucks and mixing chemicals. In several years, Plaintiffs Mr. Reed, Mr. Johnson, Mr. Gregory Strong, Mr. Richard Strong, and Mr. Stacy Griffin trained the white H-2A workers in these tasks and others. Nonetheless, PFP failed to compensate Plaintiffs at the same rate as it paid its H-2A workers for performing the same tasks. Instead, PFP paid Plaintiffs at rates substantially below the applicable AEWRs. Plaintiffs Mr. Reed, Mr. Johnson, Mr. Jones, Mr. Walter Griffin, Mr. Gregory Strong and Mr. Richard Strong were paid the federal minimum wage – $7.25 per hour – for their labor, with a slightly higher rate ($8.25 per hour) for work performed on weekends. Plaintiffs Mr. Stacy Griffin and Mr. Simpson were paid $9.00 per hour for their work driving heavy trucks.

43.     PFP intentionally paid its Black workforce less than its white foreign workers for the same or similar work.  The white foreign workers were also given other benefits not provided to Plaintiffs and other Black domestic workers.

44.     At no time did PFP display in a conspicuous place at Plaintiffs' worksite a DOL poster (Form WH 1376) notifying workers of their rights under the AWPA, including the right to obtain from PFP a written statement of the terms and conditions of employment. Prior to the spring of 2021, when they consulted with attorneys, Plaintiffs were unaware of their rights under the AWPA.

- 16 -

45.     At no time did PFP display in a conspicuous place at Plaintiffs' worksite a DOL poster (Form WH 1491) notifying the workers of their rights under the H-2A program. Prior to the spring of 2021, when they consulted with attorneys, Plaintiffs were unaware of their rights under the H-2A program and its implementing regulations.

46.     PFP failed to keep records with respect to Plaintiffs' labor showing for each workday the hours of work offered, and the starting and finishing time.

47.     Plaintiffs were paid by check. The stubs for these paychecks were the sole written statements relating to their earnings that Plaintiffs received on paydays. The wage statements did not show the hours offered or PFP's Federal Employer Identification Number.

48.     During a portion of the time he was employed by PFP in 2019, Plaintiff Richard Strong resided in housing owned or controlled by PFP. The housing was in bad condition: infested with rats, and lacking window screens. The wood was worn and rotted, which allowed birds to enter the house through the attic. For this housing, PFP withheld $1400 from Mr. Richard Strong's December 2019 paycheck, covering the months of December 2019 through April 2020. The rental charges exceeded the actual cost of these facilities and included a profit to PFP. As a result of these withholdings, Mr. Richard Strong was paid less than the federal minimum wage of $7.25 per hour during those 2019 workweeks in which rent charges were deducted from his earnings.

49.     PFP also provided separate housing to its white H-2A workers free of charge that was in far better condition than the housing provided to Mr. Richard Strong.

50.     The housing occupied by Mr. Richard Strong has never been certified by a State or local health authority or other appropriate agency as meeting applicable safety and health standards related to migrant housing facilities.

51.     At no time did PFP post in a conspicuous place at Mr. Richard Strong's housing a copy of a certificate of occupancy from a State, local or federal agency which had conducted a housing safety and health inspection of the facilities.

52.     At no time did PFP post in a conspicuous place at Mr. Richard Strong's housing a written statement of the terms and conditions of occupancy.

53.     At the outset of 2020, Mr. Richard Strong was still living in housing owned by PFP. However, PFP did not call him back for a job that season. At some point in early spring 2020, PFP took back a company truck Mr. Richard Strong had used for work, and soon afterwards, it directed him to vacate the premises. After 24 years working for PFP, Mr. Richard Strong never received any notice of his termination or explanation for why he was no longer needed. Mr. Richard Strong possessed all the specified qualifications for the jobs given to PFP's white H-2A workers and, had he been notified of those positions and the wage rate being paid, he would have accepted the job.

54.     Mr. Johnson finished work for PFP in December 2019, expecting to be called back to work in February 2020 for the following season. After 19 years working for PFP, Mr. Johnson never heard from PFP about any job openings in 2020. When he inquired about a job, he was told he was no longer needed. Mr. Johnson possessed all the specified qualifications for the jobs given to PFP's H-2A workers and, had he been notified of those positions and the wage rate being paid, he would have accepted the job.

55.     Prior to the 2020 agricultural season, Mr. Reed, who had also worked for PFP for 19 years, told PFP that he was prepared to return to his long-time job, which included all the duties listed in PFP's H-2A application for that season. However, Mr. Reed requested that he be paid the same wage rate as PFP's white H-2A workers. PFP refused Mr. Reed's request, telling

- 18 -

Mr. Reed that PFP could not afford to give raises as they had several South Africans who would be arriving soon who needed to be paid at a higher rate, and that Mr. Reed's rate would remain at the federal minimum wage. Because of PFP's failure to pay him at the same rate as the white H-2A workers, Mr. Reed did not work for PFP during 2020.

56.     Mr. Walter Griffin last worked for PFP in or about October 2019, expecting to be called back to work in 2020 for the following season. After 20 years working for PFP, Mr. Walter Griffin never heard from PFP about any job openings in 2020. Mr. Walter Griffin possessed all the specified qualifications for the jobs given to PFP's H-2A workers and, had he been notified of those positions and the wage rate being paid, he would have accepted the job.

57.     For the Plaintiffs who did work for PFP in 2020, their hours were greatly reduced. PFP's submissions to DOL stated that the company required the services of eight agricultural equipment operators to work an anticipated 64.98 hours per week from February 1 through November 15, 2020, and the farm's white South African H-2A workers were offered work opportunities at approximately this level. However, PFP offered far fewer hours to Plaintiffs for the 2020 agricultural season.

58.     PFP hired Mr. Gregory Strong for work during the 2020 agricultural season on a limited, occasional and part-time basis. PFP failed to offer Mr. Gregory Strong the same amount of employment opportunities as it offered the farm's white H-2A workers. Instead, PFP employed Mr. Gregory Strong on a limited basis during the first few months of the 2020 agricultural season and then offered him employment on only an occasional, part-time and limited basis through the remainder of the season. PFP furloughed Mr. Gregory Strong in May 2020 and did not offer him any employment opportunities again until September 2020. For the limited employment opportunities extended to him by PFP in 2020, Mr. Gregory Strong was paid

on the same basis he had been in 2018 and 2019, *i.e.*, $7.25 per hour for weekday work and $8.25 per hour for work during the weekends. After completing the season in 2020, Mr. Gregory Strong was not called back to work in 2021.

59.     Mr. Jones worked the harvest season in 2020, finishing work for PFP in or about October 2020. Through conversations with Pitts management, Mr. Jones expected he would be called back for seasonal work starting in February 2021. However, Mr. Jones never heard from PFP about any job openings in 2021. Mr. Jones possessed all the specified qualifications for the jobs given to PFP's H-2A workers and, had he been notified of those positions and the wage rate being paid, he would have accepted the job.

60.     Mr. Stacy Griffin and Mr. Simpson were hired in the fall to help transport PFP's harvested crops in 2020, but PFP never notified Mr. Stacy Griffin and Mr. Simpson of the job opportunities available operating heavy trucks during the early months of the 2020 agricultural season. Instead, during those early season months, PFP employed its white H-2A workers to drive heavy trucks to deliver water to various sites on the farm, and to transport obsolete or surplus equipment to auction sites outside the farm property and for other purposes. When Mr. Stacy Griffin and Mr. Simpson were finally offered jobs, in or about August 2020, they were offered fewer hours of work than PFP's white H-2A workers, including those who drove heavy trucks.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT (AWPA)

61. This count sets forth a claim by Plaintiffs for damages, injunctive relief and declaratory relief with respect to the PFP's violations of the AWPA and its attendant regulations during the agricultural seasons from 2014 through 2020.

62. At all times relevant to this action, Plaintiffs Mr. Reed, Mr. Johnson, Mr. Jones, Mr. Walter Griffin, Mr. Gregory Strong, Mr. Stacy Griffin and Mr. Simpson were seasonal agricultural workers within the meaning of the AWPA, 29 U.S.C.§ 1802(10)(A).

63. Except during the period in 2019 when he resided in PFP's housing, as set out in Paragraph 48, Plaintiff Mr. Richard Strong was a seasonal agricultural worker within the meaning of the AWPA, 29 U.S.C. § 1802(10)(A), at all times relevant to this action.

64. During the period in 2019 when he resided in PFP's housing, as set out in Paragraph 48, Plaintiff Mr. Richard Strong was a migrant agricultural worker within the meaning of the AWPA, 29 U.S.C. § 1802(8)(A).

65. At all times relevant to this action, Plaintiffs were engaged in corresponding employment with PFP's H-2A workers within the meaning of the H-2A regulations, 20 C.F.R. § 655.103(b).

66. At all times relevant to this action, PFP was an agricultural employer within the meaning of the AWPA, 29 U.S.C. § 1802(2), in that it operated a farm and employed migrant or seasonal agricultural workers, including Plaintiffs.

67. Pursuant to 20 C.F.R. § 655.122(q), PFP's H-2A applications and clearance orders were binding work contracts between Plaintiffs and PFP during the periods encompassed in PFP's H-2A applications from 2014 through 2020.

68. Plaintiffs' work contracts, as embodied in PFP's H-2A applications and clearance orders, constituted working arrangements under the AWPA, 29 U.S.C. §§ 1822(c) and 1832(c).

69.     In violation of the AWPA, 29 U.S.C. §§ 1822(c) and 1832(c), PFP violated without justification the terms of its working arrangements with Plaintiffs, as embodied in PFP's H-2A applications and clearance orders. Among other things:

    a.   PFP failed to pay Plaintiffs wages at least equal to the AEWR, as set out in Paragraph 42;

    b.   As set out in Paragraphs 42 and 43, PFP failed to offer and provide the same wages to Plaintiffs as PFP paid to its H-2A workers;

    c.   As set out in Paragraphs 37, 40 and 53 through 59, PFP failed to offer Plaintiffs the same job opportunities that PFP provided to its H-2A workers. From 2014 through 2020, PFP used its H-2A workers to operate heavy trucks but hired Plaintiffs Mr. Stacy Griffin and Mr. Simpson as heavy truck drivers only during the harvest months, approximately mid-July through November. In 2018 and 2019, PFP offered Mr. Jones work only during the harvest months, even though it employed white H-2A workers to perform the same job duties as Mr. Jones during the pre-harvest months. In 2020, PFP employed its H-2A workers to perform the jobs described in PFP's H-2A applications, as well as other tasks, while offering Plaintiff Mr. Gregory Strong only occasional, part-time work and refusing to offer work paid at the appropriate wage rate to Plaintiffs Mr. Reed, Mr. Johnson, Mr. Jones, Mr. Walter Griffin, and Mr. Richard Strong;

    d.   As set out in Paragraph 53, PFP laid off Plaintiff Mr. Richard Strong in early 2020 for other than a lawful, job-related reason;

- 22 -

e. As set out in Paragraph 58, PFP laid off Plaintiff Mr. Gregory Strong in May 2020 for other than a lawful, job-related reason;

f. As set out in Paragraphs 37 and 40, PFP failed to make the same kind and degree of effort to recruit U.S. workers as it did to obtain foreign workers.

g. As set out in Paragraphs 37, 40 and 53 through 59, PFP never notified Plaintiffs in writing or otherwise of the availability at the AEWR of the positions for which the farm had hired H-2A workers;

h. As set out in Paragraph 45, PFP failed to display in a conspicuous place a DOL poster summarizing workers' rights under the H-2A program;

i. As set out in Paragraph 46, PFP failed to keep payroll records showing the daily starting and stopping times of work and the daily hours offered; and

j. As set out in Paragraph 47, the wage statements provided to Plaintiffs lacked data regarding the hours offered and the employer's Federal Employer Identification Number.

70. 1In violation of the AWPA, 29 U.S.C. §§ 1822(a) and 1832(a), PFP failed to pay Plaintiffs their wages when due, as set out in Paragraphs 42 and 43.

71. In violation of the AWPA, 29 U.S.C. §§ 1821(b) and 1831(b), and as set out in Paragraph 44, PFP failed to display in a conspicuous location a DOL poster summarizing the rights and protections under the AWPA, including the right of seasonal workers to obtain a written statement of the job terms on request.

72. In violation of the AWPA, 29 U.S.C. § 1823(b)(1) permitted Plaintiff Mr. Richard Strong to occupy the housing facility described in Paragraph 48 without first having the facility

certified by a State or local health authority or other appropriate agency as meeting applicable safety and health standards related to migrant housing facilities, as set out in Paragraph 50.

73.     In violation of the AWPA, 29 U.S.C. § 1821(c), PFP failed to post in a conspicuous place at the housing facilities occupied by Plaintiff Mr. Richard Strong and described in Paragraph 48 a written statement of the terms and conditions of occupancy, as set out in Paragraph 52.

74.     PFP's violations of the AWPA were the natural result of its conscious and deliberate acts. These violations occurred as part of PFP's regular business practices. PFP's violations of the AWPA were intentional within the meaning of the Act, 29 U.S.C. §1854.

75.     As a result of PFP's violations of the AWPA as set out in this count, Plaintiffs have suffered damages, including unpaid wages due them at the AEWR and denial of job opportunities to which they were entitled as U.S. workers.

## SECOND CLAIM FOR RELIEF
BREACH OF CONTRACT

76.     This count sets forth a claim by Plaintiffs for damages with respect to PFP's breach of employment contracts with Plaintiffs, as embodied in PFP's H-2A applications and clearance orders.

77.     In accordance with 20 C.F.R. § 655.122(q), PFP's H-2A applications and clearance orders were the work contracts for Plaintiffs during the periods they were employed on PFP's operations from 2014 through 2020.

78.     PFP breached its work contracts with Plaintiffs in several respects, including the following:

a. PFP failed to pay Plaintiffs wages at least equal to the AEWR, as set out in Paragraph 42;

b. As set out in Paragraphs 42 and 43, PFP failed to offer and provide the same wages to Plaintiffs as PFP paid to its H-2A workers;

c. As set out in Paragraphs 37, 40 and 53 through 59, PFP failed to offer Plaintiffs the same job opportunities that PFP provided to its H-2A workers. From 2014 through 2020, PFP used its H-2A workers to operate heavy trucks but hired Plaintiffs Mr. Stacy Griffin and Mr. Simpson as heavy truck drivers only during the harvest months, approximately mid-July through November. In 2018 and 2019, PFP offered Mr. Jones work only during the harvest months, even though it employed white H-2A workers to perform the same job duties as Mr. Jones during the pre-harvest months. In 2020, PFP employed its H-2A workers to perform the jobs described in PFP's H-2A applications, as well as other tasks, while offering Plaintiff Mr. Gregory Strong only occasional, part-time work and refusing to offer work at the appropriate wage rate to Plaintiffs Mr. Reed, Mr. Johnson, Mr. Jones, Mr. Walter Griffin and Mr. Richard Strong;

d. As set out in Paragraph 53, PFP laid off Plaintiff Mr. Richard Strong in early 2020 for other than a lawful, job-related reason;

e. As set out in Paragraph 58, PFP laid off Plaintiff Mr. Gregory Strong in May 2020 for other than a lawful, job-related reason;

    f.    As set out in Paragraphs 37 and 40, PFP failed to make the same kind and degree of effort to recruit U.S. workers, including Plaintiffs, as it did to obtain foreign workers;

    g.    As set out in Paragraphs 37, 40 and 53 through 56, PFP never notified Plaintiffs in writing or otherwise of the availability at the AEWR of the positions for which the farm had hired H-2A workers; and

    h.    As set out in Paragraph 45, PFP failed to display in a conspicuous place a DOL poster summarizing workers' rights under the H-2A program.

79.    Plaintiffs did perform, or at all relevant times were ready, willing, and able to perform, but for PFP's breaches, all their obligations under their agreement.

80.    PFP's breach of these contract obligations has caused Plaintiffs economic damages.

**THIRD CLAIM FOR RELIEF**
VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1866
42 U.S.C. § 1981

81.    This count sets forth a claim by Plaintiffs for damages with respect to PFP's discrimination on the basis of race and/or alienage, pursuant to 42 U.S.C. § 1981, originally enacted as part of the Civil Rights Act of 1866 and later amended by the Civil Rights Act of 1991.

82.    Through its agent C.O.C. Placements, PFP intentionally sought out white workers to fill its labor force and paid them at higher rates than its long time Black U.S. workers, including Mr. Reed, Mr. Johnson, Mr. Jones, Mr. Walter Griffin, Mr. Richard Strong and Mr. Gregory Strong, who were paid the federal minimum wage throughout the time they worked . In employing truck drivers, PFP gave preference to its white foreign workers, and failed to offer job

- 26 -

opportunities to Mr. Stacy Griffin and Mr. Simpson. PFP's supervisor, who was charged with hiring PFP's domestic workers each year, used racial slurs, including the n-word, when speaking to or about PFP's Black workers. PFP denied raises to its Black workers that would have made them equal to PFP's white workers, and by 2020, PFP had largely reduced its Black workforce, including Plaintiffs, in favor of more white workers from South Africa. In addition to higher wages, PFP provided better benefits to the white South African workers than to its Black workers.

83.     Through the acts detailed in the Amended Complaint and in Paragraph 81, PFP intentionally discriminated on the basis of race and/or alienage against Plaintiffs in their employment contracts by imposing discriminatory terms of employment and denying them the benefits, privileges, terms, and conditions of the contractual relationship.

84.     PFP's actions violated Plaintiffs' rights to make and enforce contracts and receive full and equal benefit of the law as guaranteed by 42 U.S.C. § 1981.

85.     PFP's conduct intentionally and impermissibly favored white foreign workers over Plaintiffs in the making and enforcement of employment contracts and receiving full and equal benefit of the law in violation of 42 U.S.C. § 1981.

86.     As a direct result of PFP's actions, Plaintiffs were subjected to discriminatory terms and conditions of employment and have suffered substantial damages.

**FOURTH CLAIM FOR RELIEF**
FAIR LABOR STANDARDS ACT (FLSA)

87.     This count sets forth claims by Plaintiff Mr. Richard Strong for damages for PFP's violations of the minimum wage provisions of the FLSA.

88.     As set out in Paragraph 48, in December 2019, PFP failed to pay the Plaintiff Mr. Richard Strong at least $7.25 for every compensable hour he was employed during the 2019 agricultural season, in violation of the FLSA, 29 U.S.C. § 206(a)(1).

89.     The violations of the FLSA set forth in Paragraph 87 resulted from PFP's withholding from Mr. Richard Strong's wages of charges for the housing facilities described in Paragraph 48. As set out in Paragraphs 48-50, these facilities were furnished in violation of law. As set out in Paragraph 48, these rental charges exceeded the actual cost to PFP of furnishing these facilities and included a profit for PFP or an affiliated person.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter an order:

a.  Declaring that Defendant PFP violated the AWPA and its attendant regulations as set out in Plaintiffs' First Claim for Relief;

b.  Granting judgment in favor of Plaintiffs on their claims under the AWPA set forth in Plaintiffs' First Claim for Relief, and awarding each Plaintiff his actual damages or statutory damages of $500, whichever is greater, for every violation of the AWPA set forth in that count;

c.  Granting judgment in favor of Plaintiffs on their breach of contract claims set forth in Plaintiffs' Second Claim for Relief and awarding each of them his actual and compensatory damages;

d.  Granting judgment in favor of Plaintiffs on their discrimination claims set forth in Plaintiffs' Third Claim for Relief and awarding them actual and compensatory damages;

- 28 -

e. Awarding Plaintiffs punitive damages with respect to their breach of contract claims set forth in Plaintiffs' Second Claim for Relief in an amount to be determined at trial;

f. Awarding Plaintiffs punitive damages with respect to their discrimination claims set forth in Plaintiffs' Third Claim for Relief in an amount to be determined at trial;

g. Granting judgment in favor of Plaintiff Mr. Richard Strong on his FLSA claims as set forth in Plaintiff Mr. Richard Strong's Fourth Claim for Relief and awarding him the amount of his unpaid minimum wages and an equal amount as liquidated damages;

h. Permanently enjoining PFP from engaging in race and alienage discrimination and any other employment practice which discriminates on the basis of race and alienage;

i. Awarding Plaintiffs court costs, including discretionary costs;

j. Granting Plaintiffs an award of reasonable attorney's fees;

k. Awarding Plaintiffs pre- and post-judgment interest as allowed by law; and

l. Awarding Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Respectfully submitted,

**/s/ Melia Amal Bouhabib**
Melia Amal Bouhabib, TN Bar No. 035588
*Admitted Pro Hac Vice*
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Ste. 135

- 29 -

Nashville, TN 37217
Tel.: (615) 538-0725
Fax: (615) 366-3349
abouhabib@trla.org

*/s/ Robert McDuff*_____
Robert McDuff, MS Bar No. 2532
MISSISSIPPI CENTER FOR JUSTICE
767 North Congress Street
Jackson, MS 39202
Tel.: (601) 259-8484
Fax: (601) 352-4769
rbm@mcdufflaw.com

Reilly Morse, MS Bar No. 3505
MISSISSIPPI CENTER FOR JUSTICE
764 Water Street
Biloxi, MS 39533
Tel.: (228) 702-9987
Fax: (228) 435-7285
rmorse@mscenterforjustice.org

Gregory S. Schell, FL Bar No. 287199
*Admitted Pro Hac Vice*
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Tel.: (615) 538-0725
Fax: (615) 366-3349
gschell@trla.org

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 8, 2021, I electronically filed the foregoing with the

Clerk of the Court using the ECF system which sent notification of such filing to the following:

     Timothy M. Threadgill
     Sammy L. Brown, Jr.
     BUTLER SNOW LLP
     1020 Highland Colony Parkway
     Suite 1400
     Ridgeland, Mississippi  39158-6010
     tim.threadgill@butlersnow.com
     sammy.brown@butlersnow.com

                         **/s/ Melia Amal Bouhabib**